AO 91 (Rev. 11/11)  Criminal Complaint

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI

**FILED**

**May 21 2025**

**ARTHUR JOHNSTON, CLERK**

# UNITED STATES DISTRICT COURT
## for the
Southern District of Mississippi

United States of America )
v. )
JOSEFINA GABRIEL-LOPEZ )  Case No.
)
)      1:25-mj- 603
)
)
)

_Defendant(s)_

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of _____ May 20, 2025 _____ in the county of _____ Harrison _____ in the
___ Southern ___ District of ___ MS, Southern Division ___, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 8 U.S.C. § 1326(a) | Unlawful Return to the United States by an Alien After Deportation or Removal |
| 18 U.S.C. § 111 | Forcibly Assaulting, Resisting, or Impeding Federal Agents |

This criminal complaint is based on these facts:

See Affidavit attached hereto and incorporated herein.

☑ Continued on the attached sheet.

_Complainant's signature_

David Buckley, SA, HSI
_Printed name and title_

Sworn to before me and signed in my presence.

Date: 5-21-2025

_Judge's signature_

City and state:      Gulfport, Mississippi          Robert P. Myers, Jr, United States Magistrate Judge
_Printed name and title_

## AFFIDAVIT

STATE OF MISSISSIPPI                                )
COUNTY OF HARRISON                          )
SOUTHERN DISTRICT OF MISSISSIPPI  )

I, David Buckley, being first duly sworn, hereby depose and say that:

1.  Affiant, David Buckley, is a Special Agent (SA) with the United States Department of Homeland Security (DHS), Homeland Security Investigations (HSI) and is a graduate of the Federal Law Enforcement Training Center (FLETC) where your affiant received extensive training, and has thereafter, had substantial experience and continuing formal training, concerning immigration and other federal investigations.

2.  On or about May 20, 2025, Guatemalan National, Josefina Gabriel-Lopez, was encountered by Homeland Security Investigations Special Agents assigned to the Gulfport, Mississippi, Homeland Security Investigations office, in the Southern Division of the Southern District of Mississippi. The HSI SAs were supported by agents from other agencies including the Drug Enforcement Administration (DEA) and Federal Bureau of Investigation (FBI).

3.  While following up on an attempt to locate an unaccompanied alien child (UAC), in Biloxi, Mississippi, HSI Agents encountered Gabriel-Lopez in her vehicle as she drove into her carport and after they pulled into her yard in their assigned government vehicle with the police emergency lights operating. The UAC's contact address had been previously listed as the residential address in Biloxi, MS were agents arrived and encountered Gabriel-Lopez.

4. About a week prior, HSI agents attempted to locate the UAC at that address and while there, noted the license plates of the vehicles at the property. During the previous attempt, agents encountered Gabriel-Lopez and were unable to assess if the UAC was in the residence as Gabriel-Lopez attempted to evade agents by going from her yard to the inside of her home and had difficulty communicating with the agents in the English language.

5. Database checks on a silver Toyota Camry parked at the residence bearing a license plate number, revealed the vehicle was registered to Arsenio Garcia. Further database checks revealed Arsenio Garcia was potentially illegally present in the United States and had possibly overstayed his visa.

6. As agents approached the silver Camry in the carport, they noticed a female (later identified as Gabriel-Lopez) in the driver's seat and asked her to exit her vehicle. Gabriel-Lopez refused to exit the vehicle. Agents asked Gabriel-Lopez to lower her window, and she did, but only a few inches. Agents attempted to advise Gabriel-Lopez they needed to speak with her regarding her immigration status and again asked her to exit the vehicle. Gabriel-Lopez again refused.

7. The agents were dressed in officially issued law enforcement vests clearly marked with Police badges (HSI and DEA) contacted and gave clear instructions to LOPEZ to turn the vehicle off and then exit the vehicle. Gabriel-Lopez responded with a "NO". An agent then reached through the driver's side window (which had been partially lowered) to turn off the engine. Gabriel-Lopez responded "No". Agents then attempted to reach inside the partially opened window and open the driver's door from the interior handle and Gabriel-

Lopez began closing the electrically operated window on at least one of the agent's arms causing bruising to the agent's arm.

8. Agents were finally able to open the driver's door of the vehicle, but Gabriel-Lopez refused to comply with verbal commands and refused to exit the vehicle which resulted in the agents attempt to physically remove Gabriel-Lopez from the vehicle. Gabriel-Lopez resisted and fought with agents for about three minutes. During this time Gabriel-Lopez's two adult U.S. Citizen daughters exited the home and began arguing with, interfering, and impeding the agents attempts to remove Gabriel-Lopez from the vehicle.

9. While one agent was trying to contain Gabriel-Lopez for detention and subdue her arms and hands, Gabriel-Lopez's daughter, Jennifer Garcia, got between a second agent and Gabriel-Lopez and pulled and shoved against the agent to impede the detention of Gabriel-Lopez. Garcia also was yelling profanity toward agents with demands to the effect that they release Gabriel-Lopez. The second agent attempted to detain, constrain, and subdue Garcia which resulted in the second agent's radio microphone to be dislodged from her vest and disrupting the channel keys on the radio, as well as, scratching on the second agent's arm. Gabriel-Lopez and Garcia were finally placed in handcuffs about three minutes after the altercation was initiated. Garcia was arrested for violating Title 18, United States Code, Section 111 – Assaulting, resisting, or impeding officers. While being transported to the Harrison County Adult Detention Center, Garcia asked the detaining agent if she (Garcia) had hurt her (the HSI/SA). The HSI/SA responded that her arm was scratched during the incident. Garcia apologized and advised it was likely due to her fingernails.

10. HSI supervision was notified of the altercation and responded to the location. HSI SA David Buckley was assigned to the case, as he was in the area for backup. Special Agents interviewed Garcia on scene, post Miranda waiver, and she stated she was inside the residence when agents made initial contact with her mom. Her sister went outside first, and she followed shortly after. Garcia also stated she saw the agents' green vests and knew they worked for ICE and knew she had the altercation with the agents for at least three minutes.

11. Queries of official records for Gabriel-Lopez, revealed that she was previously encountered in the U.S. illegally present and ordered removed by an immigration judge on or about January 21, 2005. She was deported to Mexico on or about January 28, 2005. It should be noted, that it later was learned that Gabriel-Lopez had falsely claimed that she was a citizen and national of Mexico to immigration officials in 2005.

12. Immigration officials have observed that some aliens from nations south of Mexico sometimes claim to be from Mexico to deceive federal officials and so that they will be removed to Mexico. Being removed to Mexico instead of their actual home nations allows for an easier unlawful reentry into the U.S.

13. After Gabriel-Lopez's deportation/removal to Mexico, on or about January 28, 2005, it later was learned that Gabriel-Lopez actually is from Guatemala. During her encounter with immigration officials on or about May 20, 2025, a family member of Gabriel-Lopez provided her Guatemalan Passport to officials as her identification. Gabriel-Lopez's passport lists her as a Guatemalan National who was born in Guatemala.

14. Finally, a review of official immigration records revealed that Gabriel-Lopez has not received permission or consent to apply for readmission or to reenter the United States

from either the Attorney General of the United States or from the Secretary of the

Department of Homeland Security. Therefore, based on these facts, there is probable

cause to believe that Gabriel-Lopez knowingly and intentionally reentered the U.S.

unlawfully in violation of Title 8, United States Code, Section 1326(a) - Unlawful Return

to the United States by an Alien After Deportation or Removal and knowingly and

intentionally forcibly assaulted, resisted, impeded and interfered with federal agents in

the performance of their official duties in violation of Title 18, United States Code,

Section 111 – Assaulting, resisting, or impeding certain officers.

David Buckley
Special Agent
Homeland Security Investigations

Sworn to and subscribed before me

on this, the 21st day of May, 2025.

Robert P. Myers, Jr.
United States Magistrate Judge